CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

NICHOLAS M. PARKER (CABN 297860)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7368
    nicholas.parker3@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:25-CR-00062 RFL |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| JOSE BADILLO, a/k/a Jose Vicente Badillo, | Hearing Date:  February 12, 2026<br>Hearing Time:  2:00 p.m.<br>Court:  Hon. Rita F. Lin<br>Courtroom:  15 (18th Floor) |
| Defendant. | |

## I.    INTRODUCTION

In 2023, the defendant, Jose Badillo, was the de facto owner of two San Francisco-based towing companies, Auto Towing and Specialty Towing. To advance his companies' business prospects, and to exact revenge against his competition in the Bay Area towing industry, Mr. Badillo orchestrated a menacing scheme: he recruited and induced co-conspirators to firebomb his competitors' tow trucks. The defendant's brazen arson campaign ultimately destroyed or caused significant damage to a total of at least six tow trucks operated by at least four of the defendant's competitor towing companies.

The government submits this sentencing memorandum to advise the Court why it believes a sentence of 60 months in custody, to be followed by three years of supervised release, is a reasonable disposition of this case. The U.S. Probation Office has recommended the same sentence. *See* Dkt. 29

1

(PSR) at 23. The defendant has not yet made a sentencing recommendation, but the government anticipates that he, too, will ask for a custodial term of 60 months—the mandatory minimum sentence on the offense of conviction. *See* 18 U.S.C. § 844(i), (n).

## II.     DISCUSSION

### A.     Offense Conduct

The government generally agrees with the recitation of offense conduct in the Presentence Investigation Report (PSR) prepared by the Probation Office. *See* PSR ¶¶ 6–26. Between April 2023 and October 2023, the defendant recruited and induced others to set fire to a total of six tow trucks belonging to four Bay Area towing companies. The defendant masterminded the scheme, the goals of which were (i) to drive more business to the defendant's own towing companies by harming his competitors' business prospects; and (ii) to retaliate against his competitors for perceived wrongs. *See* PSR ¶ 7.

- April 4, 2023: acting at Mr. Badillo's direction, one or more of his co-conspirators set fire to—and in the process significantly damaged or destroyed—two tow trucks operated by Victim Company 1, which competed for business with Auto Towing and Specialty Towing. The trucks were parked on a residential street in San Francisco when they were set aflame at about 2:45 a.m. *See* PSR ¶¶ 8–12.

- April 29, 2023: acting at Mr. Badillo's direction, one or more of his co-conspirators set fire to—and in the process significantly damaged or destroyed—a "heavy wrecker" tow truck operated by Victim Company 2, which competed for business with (and which Mr. Badillo believed had wrongfully taken business from) Auto Towing and Specialty Towing. The truck was parked on a residential street in San Francisco when it was set aflame at about 4:45 a.m. *See* PSR ¶¶ 13–16.

- July 25, 2023: acting at Mr. Badillo's direction, one or more of his co-conspirators set fire to—and in the process significantly damaged or destroyed—a tow truck operated by Victim Company 3, which competed for business with (and which Mr. Badillo believed had wrongfully tried to take a towing contract from) Auto Towing and Specialty Towing. The truck was parked on a public street in East Palo Alto when it was set aflame at about 4:00 a.m. *See* PSR ¶¶ 17–21.

- October 3, 2023: acting at Mr. Badillo's direction, one or more of his co-conspirators set fire to—and in the process significantly damaged or destroyed—two tow trucks operated by Victim Company 4, which competed for business with Auto Towing and Specialty Towing. The trucks were parked on a public street in San Francisco when they were set aflame at about 2:45 a.m. *See* PSR ¶¶ 22–26.

**B.      Procedural History**

A federal grand jury indicted the defendant on one count of conspiracy to commit arson, in violation of 18 U.S.C. § 844(i) and (n), on March 11, 2025. *See* Dkt. 1. The defendant made his initial appearance in this case on a summons on March 13, 2025, and was released on conditions that day. *See* Dkt. 6. The government subsequently filed a superseding information charging the same offense alleged in the indictment. *See* Dkt. 21.

On October 23, 2025, the defendant pleaded guilty to the sole charge against him pursuant to a plea agreement with the government. *See* Dkt. 26. As part of his guilty plea, the defendant agreed, among other things (i) to the Guidelines calculation noted below; (ii) to pay restitution for the losses suffered by the towing companies he targeted; and (iii) that the Probation Office should impose a special search condition for any period of supervised release. *See* Dkt. 26 at ¶¶ 7–9. In exchange for the defendant's guilty plea, the government agreed, among other things, to recommend the mandatory minimum sentence upon conviction for conspiracy to commit arson: 60 months in custody. *See* Dkt. 26 at ¶ 15.

**C.      Sentencing Guidelines Calculation**

The government agrees with the Probation Office's calculation of the Sentencing Guidelines. *See* PSR ¶¶ 33–43. Specifically, the government agrees that the Base Offense Level is 20 and that a four-level enhancement under U.S.S.G. § 3B1.1(a) appropriately reflects the defendant's aggravating role as the mastermind of a dangerous, destructive, and extensive arson campaign. *See* PSR ¶¶ 34, 37, 39. The government further agrees that a three-level reduction is warranted in recognition of the defendant's acceptance of responsibility, resulting in a Total Offense Level of 21. *See* PSR ¶¶ 41–43.

The government also agrees with the finding of the Probation Office that the defendant has five criminal history points, placing him in Criminal History Category III. *See* PSR ¶¶ 44–50. A total offense level of 21, at Criminal History Category III, yields an advisory sentencing range of 46 to 57 months of

imprisonment. *See* PSR ¶ 75; U.S.S.G. ch. 5, pt. A. However, because the mandatory minimum sentence (60 months) is "greater than the maximum of the applicable guideline range," the applicable Guidelines range in this case is 60 months. U.S.S.G. § 5G1.1(b); *see* PSR ¶ 75.

### D.   Applicable Law

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Sentencing Guidelines. *See id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *See id.* at 991-93.

In arriving at the appropriate sentence for Mr. Badillo, and in light of 18 U.S.C. § 3553(a), the Court should consider these factors applicable to this case, among others:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3)   the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(5)   the need to provide restitution to any victims of the offense.

### E.   Recommended Sentence and Section 3553(a) Factors

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully asks the Court to impose a sentence of 60 months in custody, to be followed by three years of supervised release. Such a sentence would be sufficient, but not greater than necessary, to reflect the purposes of sentencing, including, among other things, (i) fair consideration of the nature and circumstances of the offense and the history and characteristics of the defendant; and (ii) the needs for the sentence imposed (a) to reflect the seriousness of and provide just punishment for the offense, (b) to promote respect for the law, and (c) to afford adequate deterrence to criminal conduct.

1.    Nature and Circumstances of the Offense

It is a minor miracle that no one was hurt or killed as a consequence of the defendant's malevolent scheme. The first two arsons—on April 4, 2023, and April 29, 2023—occurred in the wee hours on residential streets in San Francisco. Had those fires not been reported and contained quickly, they easily could have spread to nearby residences, inside which people were undoubtedly asleep. Similarly, the fourth fire was set in the middle of the night, on the street, in the densely populated Dogpatch neighborhood of San Francisco.

Of course, just because no one was hurt or killed does not mean the defendant's arson campaign did not cause significant harm. Indeed, the victim impact statements submitted by three of the four corporate victims—that is, Victim Companies 1, 3, and 4—make plain the financial devastation the defendant's conduct wrought. *See* PSR ¶¶ 28–30. The owner of Victim Company 1 "lost half [his] business overnight, lost employees, and … had to lose accounts." PSR ¶ 29. Similarly, the owner of Victim Company 4 said losing two trucks "caused profound emotional distress," forced him to "abandon [his] plans for growth and expansion," and exacted an "overwhelming and lasting" emotional toll, as he "watch[ed] [his] hard work, investment, and dreams unravel due to a deliberate criminal act." PSR ¶ 30.

2.    History and Characteristics of the Defendant

In addition to this arson conspiracy case, the defendant presently is facing insurance fraud charges in two cases pending before Judge Thompson. *See* Case Nos. 3:24-cr-00471 TLT and 3:24-cr-00382 TLT; PSR ¶¶ 48, 54. He has pleaded guilty to the charges in one of those cases and is due to be sentenced on February 13, 2026. *See* PSR ¶ 48. The defendant was separately charged in state court with, convicted of, and recently sentenced to two years in custody for benefits fraud. *See* PSR ¶ 47. The defendant has also long been associated with predatory towing practices in the Bay Area. *See, e.g.*, PSR ¶ 51. Indeed, in February 2024, the San Francisco City Attorney suspended Specialty Towing, Auto Towing, Mr. Badillo, and others "for illegally towing cars of vulnerable individuals from a private commercial parking lot, limiting the times vehicles could be retrieved, and pressuring vehicle owners to pay in cash," among other unscrupulous business practices. *See* City Attorney of S.F., *Chiu Suspends Unscrupulous Towing Company After Owners Are Charged with Benefits Fraud* (Feb. 6, 2024), https://sfcityattorney.org/chiu-suspends-unscrupulous-towing-company-after-owners-are-charged-with-

benefits-fraud/. And in April 2024, a Specialty Towing truck driven by someone other than Mr. Badillo was filmed trying to tow an occupied car in broad daylight in downtown San Francisco. *See* George Kelly & Garrett Leahy, *Everything We Know About that Viral Tow Truck Video as Police Launch Investigation*, S.F. Standard (Apr. 11, 2024, 1:24 PM), https://sfstandard.com/2024/04/11/downtown-san-francisco-viral-tow-truck-video/.

3.    <u>Need for Sentence to Reflect the Seriousness of, and Provide Just Punishment for, the Offense; Promote Respect for the Law; and Afford Adequate Deterrence</u>

Given the grievous financial harm Mr. Badillo and his confederates did to the victim companies, not to mention the danger their conduct posed to bystanders, a significant custodial sentence is necessary to reflect the seriousness of, and to provide just punishment for, the offense—and to promote respect for the law and deter future criminal conduct.

To be sure, Mr. Badillo did not set any of the fires himself. He remained at arm's length from the conduct on the ground, presumably in an effort to minimize his exposure. But Mr. Badillo was the puppet master: He selected the targets. He told his co-conspirators what to do. And he compensated them when they carried out his commands. That is why the parties and Probation Office agree Mr. Badillo warrants the most significant aggravating role enhancement (+4) permitted under U.S.S.G. § 3B1.1. *See* Dkt. 26 at ¶ 7; PSR ¶¶ 7, 37. He is the most culpable co-conspirator in this scheme, even as he did not himself strike a single match. The Court should sentence him accordingly.

## III.    RESTITUTION

Mr. Badillo has agreed to pay restitution in an amount to be set by the Court. *See* Dkt. 26 at ¶ 9. Although the government has received restitution requests—and materials in support of those requests—from the owners of most, if not all, of the victim companies, it is still evaluating those materials (all of which it has produced to counsel for Mr. Badillo) to determine the final restitution amount.

The government therefore respectfully requests that the Court hold open the issue of restitution and schedule a restitution hearing approximately 60 days after sentencing. If in the meantime the parties come to an agreement on the amount of restitution, they will advise the Court and ask that the hearing be taken off calendar.

6

## IV.    CONCLUSION

For the foregoing reasons—and in full consideration of the applicable Sentencing Guidelines and mandatory minimum sentence, the goals of sentencing, and the factors set forth in 18 U.S.C. § 3553(a)— the government respectfully requests that the Court sentence the defendant to 60 months in custody, to be followed by three years of supervised release. The government also requests that the Court order the defendant to pay restitution in an amount to be determined after sentencing, and that it include the expanded search condition to which the defendant has already agreed among the conditions of his supervised release. The defendant shall also pay a mandatory special assessment of $100.

DATED:  February 5, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney


 /s/ *Nicholas Parker*
NICHOLAS M. PARKER
Assistant United States Attorney